■ In the Matter of ANTHONY M., a Child Alleged to be Abandoned. EPISCOPAL MISSION SOCIETY, Appellant; ANTHONY M., Respondent. [600 NYS2d 37] —Order, Family Court, New York County (Judith B. Sheindlin, J.), entered November 12, 1991, which dismissed a petition to terminate respondent's parental rights with respect to the subject child on the ground of abandonment, unanimously reversed, on the law and the facts, the petition granted and the matter is remanded for a dispositional hearing, without costs.

The subject child was born on December 20, 1988 and came under the care of petitioner-appellant on January 17, 1989. On March 6, 1991, the agency filed a petition to terminate the parental rights of the subject child's natural parents, Anthony M. and Jenelle F., on the grounds of abandonment and permanent neglect. Jenelle F., who is not a party to this appeal, had her parental rights terminated on the ground of abandonment on July 9, 1992. Prior to the fact-finding hearing concerning the respondent father, the agency withdrew the allegations of permanent neglect and proceeded on the abandonment cause of action alone.

Respondent was arrested approximately one month after his son's birth and remains incarcerated to date. It is undisputed that respondent made no contact with his son or the agency between the date of his arrest and the filing of the petition more than two years later. Nevertheless, after a fact-finding hearing, the Family Court dismissed the petition on the following grounds: (1) respondent proved that he did everything he could to locate his son; (2) petitioner discouraged contact between respondent and his son; and (3) petitioner made no attempt to notify respondent as to the whereabouts of his son.

Where, as here, the petitioner proves by clear and convincing evidence that the parent failed to communicate with the child or agency during a six month period immediately preceding the filing of a petition, an intent to forego parental rights is presumed unless evidence is offered to the contrary (Social Services Law § 384-b [5] [a]). To rebut the inference of

abandonment, respondent had to prove that he was unable to maintain contact with his son or that he was discouraged from doing so by the agency *(ibid.)*.

First, respondent did not prove that his failure to contact his son was due to inability. Respondent's burden was to show that the asserted hardship in contacting his son so permeated his life that contact was not feasible *(Matter of Catholic Child Care Socy. [Danny R.],* 112 AD2d 1039, 1040). Incarceration does not excuse a parent from establishing or maintaining contact with a child *(Matter of Dawntal Danielle C.,* 170 AD2d 375; *Matter of Thomas G.,* 165 AD2d 729; *Matter of I. R.,* 153 AD2d 559; *Matter of Ulysses T.,* 87 AD2d 998, *affd* 66 NY2d 773). Even if visits cannot be arranged, an incarcerated parent can maintain contact with his child through cards, letters or telephone calls *(Matter of Thomas G., supra,* at 729-730).

Respondent's excuse that he was unable to ascertain his son's whereabouts is insufficient to rebut the presumption of abandonment. First, it is noteworthy that the subject child's placement with petitioner occurred more than a month prior to respondent's incarceration. Following his incarceration, respondent's only serious efforts to locate his son were to write to the Child Welfare Agency ("CWA") in January 1990 and to the maternal grandmother of the subject child in November 1990. Since respondent did not make any real attempt to locate his son until nearly a year after he was incarcerated and gave up his search when he encountered the slightest obstacles, respondent's efforts to locate his son did not demonstrate a sincere interest in retaining parental rights and are insufficient to negate a finding of abandonment *(Matter of Dawntal Danielle C., supra,* at 376).

Respondent also did not prove that the agency discouraged him from contacting his son. The court concluded that respondent was discouraged from ascertaining the whereabouts of his son as a result of the child being identified in petitioner's and the CWA case record as Anthony F. rather than Anthony M. However, the record establishes that the CWA case record for the subject child is maintained under the natural mother's name and in his sole written inquiry to CWA, respondent gave Jenelle F.'s name. Furthermore, the record establishes that if CWA had contacted petitioner to request information about Anthony M. or Anthony F., the information would have been ascertainable under either name. Accordingly, contrary to the court's finding, respondent was not discouraged from locating his son as a direct result of the modification of his son's name in the records of petitioner and CWA.

Finally, the court erred in holding that petitioner was required to attempt to locate respondent to inform him of the subject child's whereabouts. The law is clear that when proceeding on the ground of abandonment, an agency need not prove that it exercised diligent efforts to encourage and strengthen the parental relationship, including searching for a parent whose whereabouts are not known (see, Matter of Crawford, 153 AD2d 108). Concur—Rosenberger, J. P., Ellerin, Ross, Asch and Kassal, JJ.